## Appeal of James O. Frazier, Sheriff.

If the sheriff distributes, before the return day, the proceeds of an execution, he is responsible for a failure to distribute to the persons entitled.

At any time before the return day the court may in a proper case, at its discretion, order the sheriff to pay into court the proceeds of execution.

The court has power to enforce by attachment its order to the sheriff to pay the proceeds of execution into court.

(Argued April 29, 1887. Decided May 9, 1887.)

January Term, 1887, No. 103, E. D., before MERCUR, Ch. J.,

NOTE.—A sheriff who distributes the proceeds of real property derived on execution without payment into court does so at his own risk. Enterline v. Comrey, 15 Pa. Co. Ct. 627; McCaully v. Boeshore, 2 Lanc. L. Rev. 337. He may apply for leave to so pay for his own protection. Kochenderfer v. Feigel, 5 W. N. C. 404; Kirk v. Ruckholdt, 7 W. N. C. 81; Com. use of Oil

GORDON, TRUNKEY, STERRETT, and GREEN, JJ. Certiorari sur appeal from a decree of the Common Pleas of Montour County making absolute a rule on the sheriff to show cause why he should not pay into court the amount realized from a sale of personal property on fieri facias. Affirmed.

The petition for the rule was as follows:

"The petition of Stephen Smith respectfully represents that he is an execution creditor of E. J. Beyer; that fi. fa. No. 7, to May term, 1886, in his suit against E. J. Beyer was placed in the hands of James O. Frazier, sheriff, after said sheriff had received fi. fa. No. 5, May term, 1886, at the suit of Peter M. Dietrich, trustee under the provisions of the 22d section of the act of assembly of April 5, 1881, for Sarah A. Beyer, against E. J. Beyer, and also fi. fa. No. 6, May term, 1886, at the suit of Gideon Dietrich against said E. J. Beyer; that both the judgment of Peter M. Dietrich, trustee for Sarah A. Beyer, and of Gideon Dietrich, the former for $1,396.45 and the latter for $69.45, were entered upon a confession by the defendant; that on the 31st ult. the personal property of defendant, E. J. Beyer, was sold and the sum of $2,866.75 realized; that your petitioner through his attorney gave notice to said sheriff to pay into court the said sum so realized; that your petitioner is informed and believes and expects to be able to prove, if the opportunity is given, the following: that the judgment given to Sarah Beyer, wife of said defendant, is without consideration and fraudulent; that said wife had no such sum to furnish her husband, the defendant, and that the judgment was given for the purpose of securing to defendant his personal property; that the judgment confessed to Gideon Dietrich is either entirely without consideration or is grossly in excess of any amount due said Dietrich from defendant, and was made thus large for the purpose of aiding the defendant in securing, as aforesaid, his personal property; that at the sale of said personal property, the property was purchased almost entirely under the direction of the said defendant and at prices dictated by him.

City Sav. Bank v. Walter, 99 Pa. 184. Or he may be compelled to so do by order of court upon the application of a party interested. Zeigler v. Pierce, 23 W. N. C. 27; Leinau v. Albright, 28 W. N. C. 165, 10 Pa. Co. Ct. 171; Dickerman v. Edinger, 13 Pa. Co. Ct. 541, 3 Pa. Dist. R. 11. In such case he is entitled to previous notice of the motion (Dewoody v. Dewoody, 157 Pa. 603, 27 Atl. 667); and cannot be compelled to do so before the return of the writ (Borlin's Appeal, 9 W. N. C. 545).

"Your petitioner further sets forth that unless he is permitted to contest the right of said Sarah A. Beyer and Gideon Dietrich to this fund great injustice will be done him, as large amounts of judgment liens are entered against real estate of the defendant prior to his; petitioner therefore prays the court for a rule to show cause why he should not pay into court the sum so realized."

The petition was filed and the rule granted as prayed April 2, 1886.

On April 15 the following answer was filed:

"James O. Frazier, high sheriff of Montour county, appears and makes answer to said rule as follows:

"There was issued from the court of common pleas of Montour county on the 20th day of March, A. D. 1886, a writ of fieri facias, at the suit of Peter M. Dietrich, trustee, under the provisions of the 22d section of the act of April 5, 1851, for Sarah A. Beyer, against E. J. Beyer, to No. 5, May term, 1886. This execution was placed in my hands at 2 o'clock in the afternoon of said 20th day of March, 1886. Another writ of fieri facias was issued upon the same day to No. 6, May term, 1886, at the suit of Gideon P. Dietrich against E. J. Beyer. This writ was placed in my hands at 3 o'clock in the afternoon of said 20th day of March, 1886.

"By virtue of these writs I did, on the 22d day of March, A. D. 1886, levy on all the personal property of the defendant, that I could find in my bailiwick and advertised to sell the same on the 31st day of March, 1886, on which day I sold the same for the sum of $2,866.75.

On the 25th day of March, A. D. 1886, there was issued out of said court a writ of fieri facias to No. 7, of May term, 1886, at the suit of Stephen Smith against E. J. Beyer; and the same was placed in my hands at 8:45 A. M. of said day. Upon the same day I made a levy upon the goods of the defendant that I had previously levied upon and advertised for sale under and by virtue of writs of fieri facias Nos. 5 and 6, May term, 1886.

"Just before selling the goods on the 31st day of March, A. D. 1886, I received a notice from H. M. Hinckley, Esq., attorney for Stephen Smith, plaintiff in said writ of fieri facias, No. 7, May term, 1886, a copy of which is hereto attached, 'to pay into court the money raised by the sale of personal property of defendant on above writs to await distribution of the court of the

same.' Acting in accordance with my understanding of my duty as sheriff, and in accordance, as I so understand it, with the law of this commonwealth, relating to the distribution of the proceeds of the sale of personal property by sheriffs, I assumed the responsibility of distributing the proceeds of the sale of said personal property under the above-mentioned writs, and made return upon fieri facias, No. 5, May term, 1886, as follows, viz.: 'Now March 31, 1886, goods and chattels of the defendant sold as per schedule hereto annexed for the sum of $2,866.75; and after deducting $125.05, costs on this writ and attorney's commissions, and $114.04, costs and attorney's commissions on fi. fa. No. 6, May term, 1886, there remained in my hands the sum of $2,627.66 out of which I paid $1,398.98, in full of the debt and interest of this writ to Wm. J. Baldy, attorney for plaintiff; and the balance, $1,228.68, I applied upon fi. fa. No. 6 of May term, 1886, Gideon P. Dietrich v. E. J. Beyer. So answers James O. Frazier, sheriff.'

"The notices served upon me before the sale of the said personal property by H. M. Hinckley, Esq., attorney for Stephen Smith, I did not consider would relieve me from the necessity of assuming the responsibility of distributing the funds raised from the sale of the said personal property in any event; but more particularly did it not change my idea and belief of what was my duty, as it did not allege the judgments of the first execution creditors to be fraudulent or wrong in any manner; and further saith not."

Upon making the rule absolute ELWELL, P. J., filed the following opinion:

It appears by the answer of the sheriff, that on the 25th day of March last he had in his hands three executions against E. J. Beyer, in pursuance of which he levied upon the personal property of the defendant. Execution No. 5 was issued upon a judgment confessed by the defendant to P. M. Dietrich in trust for the wife of the defendant; No. 6 was upon a judgment confessed to G. P. Dietrich, and No. 7 upon a judgment in favor of Stephen Smith, upon whose application and affidavit this rule was granted. The execution in favor of Mrs. Beyer was placed in the hands of the sheriff at 2 o'clock P. M. of the 20th day of March. That of Dietrich was placed in his hands one hour later, and that of Stephen Smith five days afterwards. All were levied on the same property.

Before sale, which took place on the 31st day of March follow-ing the levy, the attorney for Stephen Smith gave a written notice to the sheriff requiring him to pay the proceeds of the sale into court to await the disposition of the same by the court.

On the second day of April, the court being then in session, this rule was obtained on application as before stated. The re-turn day of the several writs was the 24th day of May, more than seven weeks after the day of sale.

In his answer the sheriff states that he sold the property levied upon for the sum of $2,866.75, and that, after deducting costs, he applied to the execution of Mrs. Beyer the sum of $1,398.98, and paid the same to her attorney; and the balance of the money to wit: $1,228.68, he applied on execution of G. P. Dietrich, taking upon himself the responsibility of making distribution of the proceeds of the sale as he believed he had a right to do; the notice given him not specifying any reason why he should have the money before the court, the questions raised by the facts are:

First. Whether, under the circumstances, the assumption of the responsibility by the sheriff, and the distribution of the fund as made by him, have placed him beyond the reach of the rule to bring the money before the court; and,

Second. If not, whether the case as presented is a proper one for the interference of the court by a rule for that purpose.

The 41st section of the act of June 16, 1836, in regard to executions, provides that on sale of personal estate the sheriff shall make return of his proceedings to the court according to the command of the writ. The several writs in the hands of the sheriff commanded him to have the moneys before the court on the fourth Monday of May, 1886.

"Forms of writs," said MARSHALL, C. J., in Turner v. Fen-dall, 1 Cranch, 136, 2 L. ed. 60, "furnish strong evidence of what was the law when they were devised, and the duty of the officer to whom they are directed."

In McDonald v. Todd, 1 Grant Cas. 18, GIBSON, J., said, in reference to payments by the sheriff: "In order to prevent delay and save the expense of cumbrous forms it has been usual, where the right to the money is not disputed, to pay it immediately to the creditor supposed to be entitled to it, and to retain the exe-cution. In such a case, however, the payment is private, unoffi-cial, and informal; and when the sheriff has departed from the

line prescribed by his writ, he acts on his own responsibility. He discards its authority which consequently gives no further stamp to his act. In regard to acts without the pale of it, he can neither be protected nor prejudiced by it."

The practice of allowing the sheriff to pay over the money directly to the plaintiff is a permissive departure from the command of the writ. The right of the sheriff, therefore, to pay the money to the party, out of court, is not at this day to be questioned; but it by no means follows that the court has lost the power of compelling its officers to obey the commands of its process. It cannot be doubted that the court has the right, whenever application is made for the purpose and a proper case stated, to compel the sheriff to bring the money into court. If the court has not this power, executions instead of being the end of the law will, in many cases, be the commencement of a new series of suits and litigation.

. The law upon this subject is pretty fully considered by ROGERS, J., in Williams's Appeal, 9 Pa. 267. He says: "Nothing in the law is surer than that a sheriff who undertakes of . his own authority, merely, to distribute money levied under several executions before the return day of the writs, does so at his own risk. . . . The command of his writ is not to pay to the plaintiffs, but to bring the money into court on the return day. I am aware that in practice the sheriff usually assumes the responsibility of disbursing the fund raised by execution, without the intervention of the court; and where there are no conflicting pretensions to it, it is very well. Perhaps it is his duty to do so, and thus avoid the expense and delay incident to a payment into court. But this will not excuse him if he commit a blunder, though ever so unintentional. . . . It is the duty of the sheriff to retain the money in his hands, in order to allow parties to apply to the court to set aside an execution which may be sued out for fraudulent purposes; and if the sheriff were not bound to retain the money, it might, in many instances, be mischievous."

If the sheriff lends his aid to one party and withholds it from another, he must stand or fall by the eventual rights of the party he preferred. He is not bound to try the question of fraud or decide which of the two creditors should have the preference, but he ought to stand indifferent between them and not lend himself to either. The junior execution creditor is entitled to time

until the return day, to contest the right of the senior to the fund, and the sheriff cannot deprive him of it by preferring another. Where there are several executions the sheriff cannot without peril pay any of the plaintiffs, except upon notice and by consent of the others.

The same general view of the law is expressed by PAXSON, J., in *Re* Bastian, 90 Pa. 476, in these words: "When parties are not satisfied for the sheriff to make distribution they can always prevent it by proper application to the court in seasonable time. But it comes too late when made long after the return of the writ and after the sheriff has in good faith applied the money to the liens."

In practice, the sheriff is not permitted to pay the money into the hands of the prothonotary without a special order of the court. If in all cases he might do so, the parties would be delayed and unnecessary expenses would be incurred. The writ does not command him to pay the money to the plaintiff nor to pay it into court, but to have it before the court. After the return day he may safely pay the plaintiff, according to the priority of the execution, unless he has notice before that time that the right of the prior execution creditor to the fund will be contested. Marble Co. v. Burke, 5 W. N. C. 124.

The several cases cited from the Weekly Notes, decided by the court in Philadelphia, refusing permission to the sheriff to pay money into court, do not go the length of holding that this may not be done in a proper case;—the court reserving to itself to decide whether the circumstances presented in any case are such as seem to require that distribution should be made by it instead of the sheriff. In order to distribute, the court must have possession of the fund to be distributed; hence, the necessity of the sheriff's retaining the money until the junior creditor can have an opportunity of presenting the case to the court.

It is contended that as the sheriff believed he had the right to take the responsibility of paying out the money, it will be a hardship upon him if he is now required to bring the amount into court.

To this it is a sufficient answer to say, in the language of the court in Stebbins v. Walker, 14 N. J. L. 90, 25 Am. Dec. 503: "If the conduct of the sheriff is *mala fides,* or if with his eyes open, after notice, he pays over the money, the court will not stop to inquire whether he can get it back."

In the case in hand the notice given was in effect not to pay to the senior execution creditors. The writ commanded the sheriff to have the money before the court. The notice requested him not to make distribution; but he at once, on the very day of the sale and weeks before he was required to make return, and when he knew that the court would be in session within the next forty-eight hours, made what Judge GIBSON calls a private unofficial application of the proceeds of the sale. In so doing he lent his aid to one party, to the prejudice of the other. The judgment against the defendant in favor of his wife may have been for a debt honestly due. Still between her and her husband's execution creditors the burden of proof would probably rest on her to show the bona fides of the transaction. However that may be, the sheriff should not so conduct the proceedings as to compel a creditor to resort to an action at law, without giving an opportunity to make an application to the court.

Whether the sheriff intended to lend his aid to one party, to the exclusion of the other or not, his acts had that effect. His assumption of responsibility cannot shield him in doing an irregular act, out of time, and to the prejudice of the rights of a creditor of the defendant. His hasty act in making the appropriation to the earlier writs in the face of notice not to do so seems to indicate an intention to aid the first execution creditors and prevent the junior execution creditor from invoking the power of the court to compel, in a summary manner, compliance with the mandate of the writ. To hold otherwise than as above indicated would be to stultify ourselves, and to yield to our ministerial officers control over the process of court to an extent not contemplated by any statute nor sanctioned by any established practice.

The amount of the execution of Stephen Smith is about $900. Payment into court of a sum equal to that debt and costs is all that need be required. As at present informed, an order to pay into court that sum will protect the rights of the applicant for this rule.

And now July 15, 1886, rule made absolute to the amount of $900; and it is ordered that James O. Frazier, sheriff, pay into the office of the prothonotary within twenty days the sum of $900, to abide the order of the court.

The assignments of error specified the action of the court in

·making the rule absolute and subsequently issuing an attach·
ment to enforce the decree.

*James Scarlet* and *W. J. Baldy,* for appellant.—Distribution
by the sheriff is at his own risk. He takes the responsibility of
applying the money as the law would apply it. If he does not
so apply it, he is liable upon his official bond. *Re* Bastian, 90
Pa. 472.

But an attachment for contempt is not included in such risk.
It is only his official bond that is· in peril. Franklin Twp. v.
Osler, 91 Pa. 162.

It may be objected as a distinguishing feature of this case
that the sheriff had notice to pay the money in. The character
of notice in this case falls short of every requirement.

In Mathiews v. Webster, 7 W. N. C. 81, it was said: "It
is not the usual practice to order into court a fund arising from
the sale of personal property; but where the sheriff is notified
of facts which render it unsafe for him to take .the responsi-
bility of distribution upon himself, and he asks to pay the
money into court, it is usual to make such an order."

In Kirk v. Ruckholdt, 7 W. N. C. 81, it was said that the rule
is for the sheriff to assume the responsibility of distribution.
When a state of facts is shown to exist, by proper proofs, which
renders it unsafe for him to do so the court will order the money
into court, not otherwise.

The notice was no act of the court from which the writs pro-
ceeded. Disobedience to it is not one of the cases which the
court could punish with contempt under the act of June 16,
1836. The court proceeds by motions, rules, and orders, and
the practice in this case was for the attorney to obtain a rule.
He could have done so by application to the court in chambers.
It would not issue, of course, for the court would only interfere
upon special grounds shown. Dillon v. Conover, 2 W. N. C.
126; Barnum's Universal Exposition Co. v. O'Brien, 7 W. N.
C. 82.

The notice to the sheriff to make him responsible for paying
the money over before the return day of his writ must deny the
good faith or validity of the judgment. The sheriff cannot go
beyond the regularity and priority of his writs. Marble Co. v.
Burke, 5 W. N. C. 125.

In every instance a wholesome practice dictates that a rule
be granted by the court. Mitchell, Motions & Rules, p. 50.

The return of the sheriff was conclusive upon him so as to make him liable for mispayment of the proceeds, and the creditor must proceed upon the bond; and in this case it was conclusive upon the court and upon all the execution creditors. McDonald v. Todd, 1 Grant Cas. 18; *Re* Bastian, 90 Pa. 472; Franklin Twp. v. Osler, 91 Pa. 162.

The sheriff could not contradict it or avoid its legal effect. Paxton v. Steckel, 2 Pa. St. 93; Mentz v. Hamman, 5 Whart. 150, 34 Am. Dec. 546.

It was not misconduct to distribute the fund before the return day of the writ for which the court is empowered to punish for contempt under the act of June 16, 1836, if there was no fraud and no rule issued by the court upon him prior to such distribution.

No misconduct of the officer was alleged or shown in the execution of his writs, and the court had no power to punish for a contempt. Purdon's Digest, p. 324.

*H. M. Hinckley,* for appellee.—In practice, where there are no conflicting claims or no other execution creditors, the sheriff generally takes the responsibility of distributing the fund before the return day of the writ; but he always does so at his own risk; and he cannot, by making a distribution of his own, take from the court the control of its own process. So long as the court has a right to inquire into the regularity and bona fides of its judgments and determine priorities, it must have a right to control the money raised on its processes.

There are some common pleas cases, such as Kirk v. Ruckholdt, 7 W. N. C. 81, where the court, in the exercise of its discretion, has refused to order the money into court, the facts not being such as to warrant any interference; but even those cases recognize the right of the court to order the money into court. Until the return day of the writ, the court has full control over the proceeds thereof. Marble Co. v. Burke, 5 W. N. C. 125.

Nothing in the law is surer than that a sheriff who undertakes of his own authority, merely, to distribute money levied under several executions before the return day of the writ does so at his own risk. Wortman v. Conyngham, Pet. C. C. 243, Fed. Cas. No. 18,056.

It is the duty of the sheriff to retain the money in his hands,

in order to allow parties to apply to the court to set aside an execution, which may be sued out for fraudulent purposes; and if the sheriff were not bound to retain the money, it might, in many instances, be mischievous. Warmoll v. Young, 5 Barn. & C. 660.

Where a sheriff has in his hands at the same time several executions against the same defendant, he cannot, without peril, pay to any of the plaintiffs before the return day, and perhaps some days after, except upon notice to and with the assent of the others. Williams's Appeal, 9 Pa. 267.

The right of the sheriff to pay the money to the party, out of court, is not at this day to be questioned; but it by no means follows that the court has lost the power of compelling its officers to obey the command of its process. The court has the right, whenever application is made for that purpose, and a proper case stated, to compel the sheriff to bring the money into court. Stebbins v. Walker, 14 N. J. L. 90, 25 Am. Dec. 500.

When parties are not satisfied for the sheriff to make distribution, they can always prevent it by a proper application to the court in seasonable time. Re Bastian, 90 Pa. 476.

A sheriff is not liable to an attachment as for a contempt, in not paying into court the money made upon an execution levied upon real estate, where he has, in good faith, after the return day, and without notice of any opposing claim, applied the money to the liens. Franklin Twp. v. Osler, 91 Pa. 162.

These are the cases the gentlemen rely upon to decide that the court had no power to order into court money raised by the sheriff upon executions, where the application for such order was made two days after the sale, and more than six weeks before the return day of the writ, and where notice that the court would be asked to interfere was given to the sheriff before the sale. Neither the cases cited nor any which the gentlemen could cite decided any such thing.

Our position, and the one sustained by all the authorities, is that until the return day of the writ, the court has full power on the presentation of a proper case to direct the distribution of the proceeds of a sheriff's sale thereon; but that after the return day, and where the sheriff has had no previous notice of a contest, he may pay out the money, taking the risk of a wrong payment; but in such case the court has no power to control by attachment. It is in such case only that the court says that contempt of court is not one of the risks that the sheriff incurs.

Per Curiam.

Notwithstanding the able argument of the counsel for the appellant, we think the conclusion of the learned judge is well sustained by his opinion filed on making the rule absolute; and on that opinion the decree is affirmed.

Decree affirmed, and appeal dismissed, at the costs of the appellant.