MEYER ABLEMAN, Trustee in Bankruptcy of Max Cohen, trading as Barros and Cohen, Bankrupt, *v.* HARLEY J. CONOWAY, Sheriff of Sussex County.

(*May* 2, 1938.)

LAYTON, C. J., sitting.

*Meyer Ableman,* in *propria persona.*

*Isaac D. Short, 2nd,* for respondent.

Superior Court for Sussex County, February Term, 1938.

LAYTON, C. J., delivering the opinion of the Court:

The theory of the petitioner is, that it was the absolute duty of the Sheriff to have in hand the proceeds of the sale of the debtor's property at the return day of the writ of execution under which it was sold; that under *Section 67f* of the *Bankruptcy Act*, as amended, 11 *U. S. C. A.*, § 107 (*f*), the levy made by the Sheriff against the debtor's property was void as against him, the trustee, it having been made within four months of the filing of the petition in bankruptcy against the execution debtor; that he, upon his appointment as trustee, became entitled to the money as a part of the bankrupt's estate, the Sheriff having been notified of the adjudication prior to the return day of the writ of execution; and that the Sheriff, by summary proceeding, should be compelled to pay to him the entire proceeds of the sale.

Whether the Sheriff may distribute the proceeds of a sale of personal property sold under execution before the return day of the writ, is a question upon which there is a dearth of authority in this State.

In 2 *Woolley, Pr.*, § 1081, it is said, "It is the duty of the Sheriff at the return term of the writ on which he has held a sale, to distribute the proceeds to and among the parties entitled." Literally, this language is susceptible of the meaning that the distribution properly cannot be made until the return term; but the statement is followed immediately by reference to the statute, *Rev. Code* 1935, § 1504, making the Sheriff liable for the amount due the proper claimant of the fund together with twenty per cent. interest thereon for neglect to pay over money "at the time when the same is payable", and giving to the Sheriff the right and privilege, in certain cases, to pay the money into Court. What was meant, undoubtedly, was that the Sheriff was bound to distribute not later than the return term, or

pay the money into Court at that term, if that course was permitted under the statute, or incur the statutory penalty. See *State v. Records,* 5 *Harr.* 146.

*Section* 4848 requires the Sheriff to return his writ on the second day after the return day mentioned therein, with his "certificate of what he has done thereon in usual and legal form"; and in 2 *Woolley, Pr.,* § 977, it is said, "The Sheriff in his return must not only indicate the manner in which he has executed the writ, and show to what executions he has applied the proceeds of sale held thereunder, but must endorse * * * his fees for all services * * *". There is no statute requiring formal confirmation of execution sales of personal property. *Rule* 99 of the Superior Court directs the Sheriff to endorse upon the writ an itemized statement of the application of the proceeds received from the sale. By rule 51, application to set aside Sheriff's sales must be made on or before the first Thursday of the term, and by universal practice a sale is automatically confirmed on the first Friday if no application has been made to set it aside. The Sheriff is not required by statute to have in hand, or before the Court, at the return day of the writ the proceeds of a sale of property sold under execution process; and, on the contrary, the statute and authority, above cited, are indicative of discretion and privilege vested in the Sheriff to make, at his own risk and peril, distribution before the return day.

At common law, all writs of execution which were to be executed by the sole authority of the Sheriff, such as a writ of *fieri facias,* when duly executed, were good, though never returned by the Sheriff, for the plaintiff had the effect of his suit, and hence, it was said, that an execution executed is the end of the law. *Bacon's Abridg.,* "*Execution,*" 710; *Hoe's Case,* 4 *Coke* 67. The Sheriff might, however, be ruled to return executed writs of execution, and for neglect so to do, an attachment would issue. 1 *Arch.*

*Pr.* 262. The statute, *Section* 4848, and the practice requires the Sheriff to return his writs of execution in the same manner, and in about the same time as he is required to return original writs. 2 *Woolley, Pr.,* § 976. The statutory provision is, however, for the benefit of plaintiffs by affording them a remedy for the neglect of officers in making returns. *State v. Clymer,* 3 *Houst.* 20. With respect to constables, it has been held that a return of execution process before the return day is not irregular, unless a further levy is thereby prevented. *Lord v. Townsend,* 5 *Harr.* 457.

The petitioner stresses the form of the mandate of the writ. This form furnishes strong evidence of what the law was when the writ was devised, and of the duty of the officer to whom it was directed. Originally, it was the duty of the Sheriff to have the money in Court, and not even payment to the creditors excused the non-performance of this duty. *Turner v. Fendall,* 1 *Cranch* 117, 2 *L. Ed.* 53; *Stebbins v. Walker,* 14 *N. J. L.* 90, 25 *Am. Dec.* 499. This strictness was relaxed, and in *Rex v. Bird,* 2 *Show.* 87, it was held that payment by the Sheriff to the party was good, and the Court would allow of such return, although the writ ran, *ita quod habeas coram nobis.* This was only by permission of the Court, and not by force of the law. 3 *Lev.* 203, 4; *Bacon's Abridg., supra,* 716. In *Hoe's Case, supra,* it was said that the words, *ita quod habeas &c,* "are but words of command to the Sheriff to make return, which if he do not, he shall be amerced; but yet the execution shall stand in force". In the side note to this case are cited *Cockram v. Welbye,* 2 *Show.* 79, and *Speake v. Richards,* 2 *Show.* 281, in each of which it was held that an action lies against the Sheriff before the return day of the writ for money levied on a *fieri facias.*

As in England, so in this country, the permissive departure from the command of the writ has long been recognized. In *Stebbins v. Walker, supra,* it is said, "The right

of the sheriff to pay the money to the party, out of court, is not, at this day, to be questioned". In *Turner v. Fendall, supra,* Chief Justice Marshall observed (*page* 136), "The rigor of this rule has been considerably relaxed, but the form of the writ, as directed by a late act of the legislature of Virginia, yet is, that the money shall be in court on the return day, and there appears no excuse for omitting this duty, unless it shall have been paid to the creditor. The sheriff may certainly make such payment out of court, if no circumstance occurs which legally obstructs or opposes it, such as an injunction from the court of chancery, in which case, by the law of Virginia, the money must be returned". In *Woodruff v. Chapin,* 23 *N. J. L.* 566, 57 *Am. Dec.* 416, the Court said, "The command of every writ of *fieri facias* is, that the sheriff shall pay the money made upon the execution into the court out of which the writ issues, and although in practice it is usual for the sheriff to pay the money directly to the plaintiff, he may at all times, for his own security, pay the money into court, and thus relieve himself from the responsibility of deciding upon the validity or priority of conflicting claims." In *Williams' Appeal,* 9 *Pa.* 267, it was said, "I am aware that in practice the sheriff usually assumes the responsibility of disbursing the fund raised by execution, without the intervention of the court; and where there are no conflicting pretensions to it, it is very well. Perhaps it is his duty to do so, and thus avoid the expense and delay incident to a payment into court". See also, *In re Frazier's Appeal,* 9 *A.* 493, 6 *Sad.* (*Pa.*) 492. In *McInerney v. Chicago Times Co.,* 41 *Ill. App.* 438, it was said, "An officer need not pay over money to parties, or to the justice, before the return day of his writ. He may pay to the plaintiff before he makes return if he sees fit, but this is his privilege and not his obligation." In *Thompson v. Central Bank of Georgia,* 9 *Ga.* 413, after stating that the statute of limitations begins to run from the

time when the money is collected, because at that time the Sheriff is liable to be sued for it, the Court went on to say, "If, then, he does collect the money before the return term, is there any law which relieves him from the obligation of paying it over at once? I know of none. He can pay it to the plaintiff in *fi. fa.* at once, and his receipt will be a protection." In *Rogers v. Sumner,* 16 *Pick. (Mass.)* 387, it was held that as the officer is liable in many cases very early to make the money due on an execution, it was his duty, upon demand, to pay it over immediately before the return day. Mr. Freeman, a careful writer, in his work on *Executions, Vol.* 3, § 448, remarks, "The practice of paying money into Court has been generally supplanted by the practice of paying it to the plaintiff. But the period at which the money ought to be paid over has not been changed. An officer who has collected money under execution ought either to pay it into Court, or over to the plaintiff on or before the return day". See also 20 *Ency. Pl. & Pr.* 228, 37 *C. J.* 788.

The petitioner relies on *Summit Motor Co. v. Modern Tire Repair Shop,* 293 *Pa.* 33, 141 *A.* 647. There, a rule was issued against a Sheriff at the instance of a trustee in bankruptcy requiring him to show cause why he should not pay the proceeds of an execution sale to personal property to the trustee. It appears that the sales had been made on and before January 28. On January 29, on receipt of a sufficient bond of indemnity, the Sheriff paid by check the proceeds of the sales to the attorneys of the execution creditors, which check was presented and paid on February 5. The Sheriff and the execution creditors, prior to the sales, knew that the execution debtor was insolvent. On February 1, before the check was paid, a petition in involuntary bankruptcy was filed against the execution debtor, and a restraining order was served on the Sheriff on February 4. The Sheriff could have stopped payment on the check, but did not do so. In these circumstances, the decree making

absolute the rule was affirmed. In its opinion, the Court said (*p.* 648), "The sheriff violated his duty in making distribution of the proceeds of the sale prior to the return day of the writs, and, so doing, he assumed the risk of a proper disposition". This expression is seized upon by the petitioner to support his thesis. It may be doubted, however, whether the Court meant to lay down a rigid rule that, in no circumstances, may a Sheriff make distribution of the fund in his hands before the return day, as, for example, where the distribution is made, with no knowledge of any conflicting claim. In *McDonald v. Todd,* 1 *Grant Cas.* (*Pa.*) 17, 18, one of the cases cited by the Court, Gibson, J., said "it has been usual, where the right to the money is not disputed, to pay it immediately to the creditor supposed to be entitled to it, and to retain the execution." In *Williams' Appeal, supra,* also cited by the Court, it is said, "Nothing in the law is surer than that a sheriff who undertakes of his own authority, merely, to distribute money levied under several executions before the return-day of the writs, does so at his own risk." *In Re Frazier's Appeal,* 6 *Sad.* (*Pa.*) 492, 9 *A.* 493, also cited by the Court, notice was given to the Sheriff by a junior creditor not to pay the money to the senior execution creditors. What the Court meant to say, in the case relied upon, and did say, was that an officer who makes distribution of money before the return day of the writ, does so at his peril.

■■ The situations disclosed by an examination of the Pennsylvania cases differ essentially from the situation presented here. At the time the sale was made and the distribution of the money accomplished, there was no other execution in the Sheriff's hands. No petition in bankruptcy had been filed against the execution debtor. No knowledge of the debtor's insolvency is attributed to the Sheriff at the time of the sale. There is no showing, then, of mala fides, or of fact or circumstance to warn the Sheriff of a conflict-

ing claim to the money. The execution and sale are not attacked. The agreement for indemnity, whatever it may have been, was not given at the time of the distribution of the money, but long after. The money was not, then, paid upon an indemnity, which is strong evidence of notice. *Young v. Marshall*, 8 *Bing.* 43, 21 *R. C. L.* 215.

That it is perilous for a Sheriff to make distribution before the return day of the writ, admits of no dispute. In all cases, except where the Sheriff may exercise his statutory privilege of paying the fund into Court, he makes distribution at his risk and peril. 2 *Woolley, Pr.*, § 1068, 1082; *In re Jefferson*, 3 *Harr.* 25, 27; *Smith v. Simmons*, 2 *Penn.* 462, 46 *A.* 746; and he must bear the consequences of mistake no matter how honest and unintentional the error may be.

This is, however, not to say that, in every case, it is the absolute and inescapable duty of the Sheriff to retain the proceeds of sale until the return day of the writ, and that although there are no conflicting executions or other claim on the fund, or notice of such, he may not pay over, at his own risk, the proceeds to the person entitled thereto, but must nevertheless wait until the return day, upon the theory that, perhaps, the execution debtor may, in the mean time, be adjudged a bankrupt. Creditors are afforded ample opportunity by the *Bankruptcy Act* to protect their rights. The consequences of their negligence ought not to be visited upon the Sheriff, acting in good faith and without notice.

The conclusion must be, that, in the circumstances shown, the distribution of the money made by the Sheriff was a lawful distribution, and that he is not liable to the demand of the petitioner.

Assuming, however, responsibility on the part of the Sheriff, the question remains whether, in the circumstances presented, the summary remedy by rule to show cause is appropriate.

Long ago it was held in England that if the Sheriff seize and sell the goods before he has notice of an *Act of Bankruptcy,* he is excused. *Bacon's Abridg. "Executions",* 715, 1 *Bl. Rep.* 205.

▪ Under 67*f* of the *Bankruptcy Act,* as amended, 11 *U. S. C. A.,* § 107 (*f*), where the Sheriff has in hand the proceeds of a sale of property sold under an execution issued within four months of the filing of a petition in bankruptcy against the execution debtor, he will be compelled to pay over such proceeds to the trustee. *In re Kenney,* (*D. C.*) 95 *F.* 427; *Id., (D. C.)* 97 *F.* 554; *Id., (2 Cir.)* 105 *F.* 897; *In re Franks, (D. C.)* 95 *F.* 635; *Clarke v. Larremore,* 188 *U. S.* 486, 23 *S. Ct.* 363, 47 *L. Ed.* 555, and *M. C. Kiser Co. v. Barbre,* 34 *Ga. App.* 447, 129 *S. E.* 887, cited by the petitioner, are the same type of case.

▪ Where, however, the sale by the Sheriff has been completed and the proceeds distributed prior to the filing of the petition in bankruptcy against the execution debtor, the debtor is not then the owner of the property or the proceeds thereof. In such case the execution creditor, who has received the proceeds of sale, will not be compelled in a summary proceeding, to pay to the trustee the amount received by him on the theory that the lien of the levy was wholly void. The remedy of the trustee, if any, is by action against the creditor for having received a preference under the provisions of *Sections* 60*a* and 60*b* of the *Bankruptcy Act,* as amended, 11 *U. S. C. A.,* § 96 (*a, b*). A summary proceeding is not appropriate for a recovery of proceeds of property after it has passed into the hands of an execution creditor, all prior to the filing of the petition in bankruptcy against the execution debtor. *In re Bailey, (D. C.)* 144 *F.* 214; *Levor v. Seiter,* 69 *App. Div.* 33, 74 *N. Y. S.* 499; *In re Resnek, (D. C.)* 167 *F.* 574; *In re Knickerbocker, (D. C.)* 121 *F.* 1004; *In re Walsh Bros., (D. C.)* 163 *F.* 352; *In re Cox-Rackley Co., (D. C.)* 245 *F.* 367. See *Mound Mines Co.*

*v. Hawthorne*, (8 *Cir.*) 173 *F.* 882; *Eyster v. Gaff*, 91 *U. S.* 521, 23 *L. Ed.* 403.

The respondent stands before this Court in no worse position than the execution creditor would stand before a court of bankruptcy. If a summary proceeding be inappropriate against the latter, it should not be employed against the Sheriff.

As the conclusion must be that the rule ought not to issue, it is unnecessary to consider the circumstance that, at the return day of the writ, and for several weeks thereafter, there was no trustee for the bankrupt's estate, and consequently no one to make demand for the proceeds of the sale. See *In re Beck*, (*D. C.*) 238 *F.* 653; *In re Wodzicki*, (*D. C.*) 238 *F.* 571.

The petition is dismissed.