MINER R. THOMAS & others *vs.* JOSHUA G. BEALS & others.

Suffolk.    January 29, 30, 1891. — May 22, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, HOLMES, & MORTON, JJ.

*Equity — Setting aside Fraudulent Sale — Return of Purchase Money —
Offer of Repayment in Bill — Interest.*

Upon a bill in equity to set aside a sale by an assignee in insolvency of the prop-
erty of the insolvent debtor, where, upon a full report of the evidence, there was
evidence that the purchaser knew that the price paid by him was too small, it
was *held* that the findings of the single justice who saw and heard the witnesses,
that the sale was made for a grossly inadequate price in fraud of the creditors,
and that the purchaser participated in the fraud, ought not to be disturbed; and
the sale was set aside, with costs to the plaintiff.

If an assignee in insolvency sells property of the insolvent debtor under license of
the Probate Court, and by collusion with the purchaser an inadequate price is
received, the purchaser, upon the sale being set aside, is entitled to a return of
the purchase money, and may be allowed interest from the date of payment,
and is to be held chargeable with the profits, if any, received by him.

A bill in equity, brought by an assignee in insolvency for the insolvent's benefit, to
set aside a collusive sale made by a former assignee, need not contain an offer
to repay the purchase money, but the court may make the relief granted condi-
tional upon such repayment.

BILL IN EQUITY, filed by assignees of an insolvent estate, to
set aside a sale, made by one Loeser, a former assignee of the
estate, of property of Edward Henshaw, one of the insolvent
debtors.    Hearing before *Knowlton*, J., who found that "the
sale was made at a grossly inadequate price, and that Henshaw
negotiated the purchase and made the arrangements for the pur-
pose of preventing his creditors from having the benefit of the
property, and of securing it for the benefit of himself and his
children; that one of the purposes of Loeser was fraudulently
to assist him in keeping the property from his creditors; and
that the defendant Beals consented to become the purchaser in
part, for the purpose of assisting Henshaw and Loeser to dispose

of the property for the benefit of Henshaw and his family, and in fraud of Henshaw's creditors." The judge reserved the case, upon the pleadings, the facts found, and a full report of the evidence taken by a commissioner, for the consideration of the full court, such decree to be entered as law and justice might require. The facts appear in the opinion.

*J. A. Maxwell,* for the plaintiffs.

*F. Paul,* for the defendant Beals.

HOLMES, J. This is a bill by assignees in insolvency, brought to set aside a sale by the former assignee, Loeser, to the defendant Beals, of the interest of Edward Henshaw, one of the insolvents, in the real and personal estate of his wife, who died intestate. That estate consisted of Mrs. Henshaw's share in the estate of her father, George W. Simmons. The facts found and reported by the judge who tried the case disclose a sale in fraud of Henshaw's creditors, but we are asked to revise the findings on the evidence, which also is before us. It is only in a very clear and exceptional case that this can be done, when the court of first instance has seen and heard the witnesses. *Rau* v. *Von Zedlitz,* 132 Mass. 164. *Francis* v. *Daley,* 150 Mass. 381, 383. *Hodgdon* v. *Cummings,* 151 Mass. 293, 295. *Chase* v. *Hubbard,* 153 Mass. 91. We have examined the evidence with some anxiety, but do not find this to be such a case.

There was ample ground for finding that the former assignee, Loeser, sold with a fraudulent intent to get what he could, and to appropriate the proceeds as he did. The more doubtful part of the case concerns the intent of Beals, the purchaser. It well might be found that he intended to save the interest for the insolvent, and that he thought it worth more than the price paid, $1,000, if held for the insolvent. But there is a question whether he can be taken to have supposed that the price was less than could be got at a fair sale. The report states that it was agreed that the property of George W. Simmons was worth the amount at which it was appraised, and that the real estate was appraised at $255,560 above the encumbrances. If the statement of the appraisal is correct, there can be no doubt about the correctness of the finding. But it appears from a part of the testimony which seems not to have been controverted, which was merely an abstract of the documents in evidence, and which, if we were

to conjecture, we should think it likely that the judge must have believed, — an assumption rarely possible to be made, — that the above mentioned sum of $255,560 was subject to encumbrances of $116,433. Other evidence, which it seems almost equally likely was deemed credible, shows other elements of reduction and uncertainty in what Beals bought, sufficient to raise a doubt whether a larger price could have been expected from a sale in the market.

On the other hand, if the judge who tried the case should adhere to his report, upon the supposed mistake being called to his attention, we should not be able to say that he was wrong, and as no motion to recommit the report was made before us, we hardly are warranted in. assuming that as it stands it does not represent his deliberate opinion. Again, we cannot say that the evidence does not warrant a finding that the property was worth a good deal more than it was likely to sell for to an outsider, and that Beals knew what it was worth, and possibly more unfavorable inferences. Taking into account the dangerous nature of the transaction, we are disposed to think that the judge was right in not allowing it to stand, although we are not inclined to attribute morally culpable motives to Beals.

The defendant Beals seemingly does not much object to the sale being set aside, if he receives back the price which he paid, and the main question is whether that shall be made a condition of the decree. The sale to him was not a sale by the insolvent himself, and therefore is not within the Pub. Sts. c. 157, §§ 96, 98, as to preferences, etc. Even such a sale is only voidable. *Freeland* v. *Freeland*, 102 Mass. 475, 477. *Morgan* v. *Abbott*, 148 Mass. 507, 508. Neither was it void because the schedule of Henshaw's property did not disclose the property in question at the time when the license to sell was granted to Loeser. The license was formally complete and adequate. If it was induced by suppression of facts on the part of Loeser, that would go only to the motives for decision, not to the form of the judicial act, and therefore only would make the decree voidable, not void. See *Fairbanks* v. *Snow*, 145 Mass. 153, 154. Moreover, it seems that the requirements of the Pub. Sts. c. 157, § 50, as to how the assignee shall sell, are merely directory. *Tuite* v. *Stevens*, 98 Mass. 305, 307. *Crowley* v. *Hyde*, 116 Mass. 589, 590.

The only ground on which the sale can be attacked is, that although in form it correctly pursued a valid license, yet in fact it was fraudulent as against creditors. But the only fraud to which Beals was even constructively a party was the giving and taking of an inadequate price. He had no notice of Loeser's intent to misappropriate the proceeds. Loeser was the proper person to receive them, and when they came to his hands they were at home as between Beals and the creditors. Such a transaction is not within the letter or the spirit of the Pub. Sts. c. 157, §§ 96, 98, where the effect and intent of the transaction is to keep both property and proceeds from being distributed according to law. See *Tapley* v. *Forbes*, 2 Allen, 20, 25. Therefore the case stands on the ordinary footing of a voidable sale, and the avoidance must be mutual if it is to be ordered. If Beals had conveyed the property to a *bona fide* purchaser, he only would be bound to make good the excess of value over the sum already received by the creditors, with interest. *Morse* v. *Hill*, 136 Mass. 60, 71. As they require him to restore the property, they must restore to him the price.

We also are of opinion that Beals should be allowed interest on the money paid by him. The plaintiffs stand in the position of having had the use of the money since he paid it over. On the other hand, Beals has had no use of, or profit from, his purchase, and whatever gain may have accrued upon it will go back to the hands of the plaintiffs. By way of further precaution, Beals may be ordered to account for any profits which he may have received up to this date. *Eastman* v. *Simpson*, 139 Mass. 348, 350. *Upshaw* v. *Debow*, 7 Bush, 442, 448. See 2 Seton's Decrees, (4th ed.) 1353, decree in *Tate* v. *Williamson*, L. R. 2 Ch. 55. If interest is allowed, it must be allowed from the date of Beals's payment. See *Richards* v. *Todd*, 127 Mass. 167, 173; *Warren* v. *Tyler*, 81 Ill. 15, 19.

There was no necessity for an offer to return the consideration before the bill was brought. A bill in equity is not like an action at law, brought on the footing of a rescission previously completed; for instance, to replevy a horse which was obtained by a fraudulent exchange, and to which the plaintiff has no right unless he has restored what he has received. *Thayer* v. *Turner*, 8 Met. 550. The foundation of this bill is that the

rescission is not complete, and it asks the aid of this court to make it so. It is objected that at least the bill ought to offer restitution. We are aware that in many cases an offer to do equity has been held necessary. But in the case at bar the court has power to impose equitable conditions upon the relief granted the plaintiffs. And it is hardly, if at all, conceivable that this decree in any event could be for the relief of the defendant alone against the plaintiffs, as in the case of an account, where, nevertheless, an offer is no longer necessary. *Goldthwait* v. *Day*, 149 Mass. 185. The plaintiffs, by seeking to set aside the conveyance, have elected to adopt all the consequences of rescission. Whether, in view of these considerations, any offer is necessary in the bill, we need not decide. The plaintiffs certainly have a right to try the question whether they ought to pay anything, and it is enough for them to offer, as they do, to repay the price if the court finds it to be due.

We see no sufficient reason for varying the general rule that the costs should follow the event.          .          *Decree accordingly.*