### DREYER v. KICKLIGHTER.

(District Court, S. D. Georgia. January 12, 1916.)

1. JUSTICES OF THE PEACE ⬄135—EXECUTION SALES—ADVERTISEMENT.

Where proper notices of a sale under an execution on a judgment of a justice of the peace were duly posted up, but were washed off the boards, where they were posted, by a heavy rain on the night before the sale, the sale was properly advertised.

[Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. §§ 426–447, 749; Dec. Dig. ⬄135.]

2. EXECUTION ⬄226—SALE—CONDUCT—PRESENCE OF PROPERTY.

It is a general rule that all levying officers, in the absence of statute or express order from the court, should be required to expose the property at the place of sale.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 613–619; Dec. Dig. ⬄226.]

3. BANKRUPTCY ⬄203—LIENS—SALES—RIGHTS OF PURCHASERS.

Bankr. Act July 1, 1898, c. 541, § 67f, 30 Stat. 564 (Comp. St. 1913, § 9651), provides that all levies, judgments, attachments, or other liens obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and that the property shall be wholly discharged and released therefrom, and shall pass to the trustee, provided that nothing therein shall destroy or impair the title obtained by such levy or other lien of a bona fide purchaser for value, who shall have acquired it without notice or reasonable cause for inquiry. *Held*, that where judgments were obtained against an insolvent, and executions issued and a sale had within four months before bankruptcy, the sale, as well as the levies and the judgments, was void, and the purchaser could be protected only in case he

⬄For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

was a bona fide purchaser for value, and acquired the property without notice, or reasonable cause for inquiry as to the bankrupt's insolvency.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ☞203.]

**4. BANKRUPTCY ☞203—LIENS—SALES—RIGHTS OF PURCHASERS.**

Defendant was a creditor of the P. Lumber Co., which had ceased to do business and was in the hands of a committee of creditors, and had tried unsuccessfully to collect his debt. He attempted to purchase a skidder from the chairman of such committee, but could not reach an agreement as to the price, and was permitted to move the skidder to a point near his own sawmill, to ascertain whether it was worth more than he had offered. Judgments had been obtained in justice court against the P. Co., and executions issued, and the attorney for the execution plaintiffs sent the executions to a constable of the district to which defendant had moved the skidder, and the skidder was levied on and sold to defendant's agent for about one-third of its value. It appeared that defendant told the constable where he could find the skidder, but did not tell the officers and agents of the bankrupt that it had been levied on. The attorney for the execution plaintiffs kept the levy and sale a secret, and the bankrupt's officers and agents did not learn thereof. The hopeless insolvency of the P. Co. was a matter of common knowledge in the community, and the attorneys in question and defendant's agent both knew of such insolvency, and, though defendant claimed that he did not know thereof, he was a frequent visitor at the company's sawmill plant, and was associated in business with its former president, who had been superseded by the creditors' committee. *Held*, that the facts showed that defendant had full notice of the insolvency at the time he purchased the property, and that he was not a bona fide purchaser, within Bankr. Act, § 67f, and, even though he did not conspire with the attorney for the execution plaintiffs in secretly selling the skidder without the knowledge of the P. Co., he took advantage thereof to buy the property at an inadequate price.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ☞203.]

**5. BANKRUPTCY ☞203—LIENS—SALES—RIGHTS OF PURCHASERS—"BONA FIDE PURCHASER."**

To establish that a purchaser of a bankrupt's property at execution sale within four months before bankruptcy was not a bona fide purchaser for value, within Bankr. Act, § 67f, it is not necessary to show actual knowledge, or an actual belief, of the bankrupt's insolvency at the time of the sale, but only such surrounding circumstances as would lead an ordinarily prudent business man to conclude that the bankrupt was insolvent.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ☞203.

For other definitions, see Words and Phrases, First and Second Series, Bona Fide Purchaser.]

**6. BANKRUPTCY ☞284—LIENS—RECOVERY OF PROPERTY BY TRUSTEE—CONDITIONS PRECEDENT.**

A trustee in bankruptcy can maintain a bill to recover property sold under execution within four months before bankruptcy, or its value, without first tendering back to the purchaser the amount paid by him for the property.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ☞284.]

**7. BANKRUPTCY ☞203—LIENS—SALES—RIGHTS OF PURCHASERS.**

Where a purchaser of the property of a bankrupt at execution sale within four months before bankruptcy, though he purchased for an inadequate price and was not a bona fide purchaser, was not guilty of such actual fraud as to warrant the setting aside of the sale if bankruptcy had not intervened, he was entitled, upon recovery of the property

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

or its value by the trustee, to reimbursement for the amount paid by him.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ☞203.]

8. BANKRUPTCY ☞165—VOIDABLE PREFERENCES—RECOVERY BY TRUSTEE.

The trustee was entitled to collect the amount so paid by such purchaser from the execution plaintiffs as a voidable preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 266; Dec. Dig. ☞165.]

9. BANKRUPTCY ☞186—LIENS—RECOVERY BY TRUSTEE.

In a suit by a trustee in bankruptcy to recover property sold under execution within four months before bankruptcy, where several years had intervened between the purchase and the trial of the action on the merits, and the property in the meantime has deteriorated in value, its value at the time of the execution sale would be adopted as the basis of a decree.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 285, 319; Dec. Dig. ☞186.]

In Equity. Bill by Joseph M. Dreyer, trustee in bankruptcy of the Perkins Lumber Company, against W. T. Kicklighter. Decree for complainant.

In the first part of the year 1912, certain creditors of the Perkins Lumber Company, a corporation of this district, obtained judgments against that company in the justice court of the 1607th district, G. M., of Tattnall county, and executions were duly issued on these judgments. These executions were turned over to the constable of the 401st district, G. M., and they were by him on the 9th day of April, 1912, levied upon a certain skidder as the property of the defendant company, and on the third Saturday in April, 1912, to wit, April 20, 1912, said skidder was sold at public outcry by the constable and bought by one Dr. Ellabee acting as agent for the defendant, W. T. Kicklighter, at the price of $200. Subsequently on May 4, 1912, a petition in involuntary bankruptcy was filed against the Perkins Lumber Company and an order of adjudication was entered on May 24, 1912, and thereafter Mr. A. E. Moynelo was appointed trustee for the bankrupt, and on the 26th day of June, 1912, the trustee brought a bill in equity against the defendant, Kicklighter, for the recovery of said skidder or its value, which was claimed to be $1,000. Moynelo died while the suit was pending, and Mr. Joseph M. Dreyer was elected trustee in his stead, and the bill proceeded in his name. Complainant alleged that the bankrupt was hopelessly insolvent for many months preceding its adjudication, and that during this time its business was shut down and its affairs were in the hands of a committee of creditors, and that these facts were well known to the defendant, Kicklighter, and that the judgments were rendered and the sale occurred within four months of the filing of the petition in bankruptcy; that the property was not exposed at the place of sale when sold by the constable; that the defendant, Kicklighter, conspired with the constable and with the plaintiffs in fi. fa. in having the sale made secretly and without notice to the Perkins Lumber Company or any of its officers or agents or attorneys; that the property was bid off at the inadequate price of $200. whereas as a matter of fact it was worth $1,000; and that for this and other reasons the said defendant was not a bona fide purchaser for value, and that the sale was void. The trustee prayed that the sale be declared null and void and that he be allowed to recover the property or its value for administration as a part of the estate of the bankrupt. The defendant demurred to the petition, and the demurrer was overruled, and thereupon the case proceeded to a trial upon its merits.

Saussy & Saussy, of Savannah, Ga., for complainant.

M. A. Smith, Jr., and W. G. Warnell, both of Hagan, Ga., and Edward S. Elliott, of Savannah, Ga., for defendant.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

LAMBDIN, District Judge (after stating the facts as above). The trustee, who is the complainant here, seeks to recover a certain skidder from the defendant, who had bought same at a sale made thereof under several justice court executions based upon judgments less than four months old, as stated above, and the trustee claims that said sale was null and void for the following reasons: Because it was not properly advertised; because the levy was an excessive one; because, under the law of Georgia, it is not legal for a constable to sell personal property without exposing it at the time and place of sale; and, lastly, because the facts in the case show that the defendant was not a bona fide purchaser for value without notice of the insolvency of the defendant, or reasonable cause for inquiry, as provided by the Bankruptcy Act.

[1] 1. The evidence seems to be clear that proper notices of the sale were posted up, but that same were washed off the boards where posted by a heavy rain on the night before the sale. The court, therefore, is of the opinion that the sale was properly advertised. Nor does the court think that the levy was such an excessive one as to be void.

[2] The next point made by the trustee is that the sale was void because the constable did not bring the skidder to the court ground on the day of the sale, and this raises a more serious question. Section 6060 of the Georgia Code of 1910 is in the following language:

"No sales shall be made, by the sheriffs or coroners, of property taken under execution, but at the courthouse of the county where such levy was made, on the first Tuesday in each month, between the hours of 10 a. m. and 4 p. m., and at public outcry: Provided, that in all cases where any sheriff, coroner, or other levying officer shall levy any execution or other legal process upon any corn, lumber, timber of any kind, bricks, machinery, or other articles difficult and expensive to transport, said officer may sell said property without carrying and exposing the same at the courthouse door on the day of sale. But the levying officer shall give a full description of the property, and the place where it is located, in the advertisement of the sale."

Counsel for the trustee contends that the proviso in the section of the Code above quoted applies only to the sales of personal property made by sheriffs and other levying officers who sell same at the door of the courthouse of the county, and that only such officers are authorized to sell machinery and other articles difficult and expensive to transport without carrying and exposing the same "at the courthouse door," but that this does not apply to constables, who make their sales, in some instances, remote from the county seat, at places where the justice courts are held. I do not find that this precise question has ever been decided by the courts of this state. It is a general rule that all levying officers, in the absence of statute or express order from the court, should be required to expose the property at the place of sale where they sell same. Had the constable in this case brought the skidder in question to the justice court on the day of the sale, the attorney for the bankrupt company would have seen it, and would have had notice of the sale, and the property would not have been sacrificed by sale to the defendant at the small price which he paid for it. According to the strict letter of the statute above quoted, the court is of

the opinion that there is some merit in the contention of the trustee on this point; but it is not necessary, however, for the court to decide this question, as the court holds that the sale was void for other reasons, as shown in this opinion.

[3] 2. The judgments under which the skidder involved in this case was sold were obtained within four months prior to the filing of the petition in bankruptcy against the Perkins Lumber Company, and were therefore, in accordance with the provisions of the Bankruptcy Law, null and void. Section 67f of the Bankruptcy Act is in the following language:

"That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid. And the court may order such conveyance as shall be necessary to carry the purposes of this section into effect: Provided, that nothing herein contained shall have the effect to destroy or impair the title obtained by such levy, judgment, attachment, or other lien, of a bona fide purchaser for value who shall have acquired the same without notice or reasonable cause for inquiry."

This provision of the Bankruptcy Law not only strikes down the judgments under which the property was sold, because rendered within the inhibited period, but also the levies made by the constable of the executions issued on these judgments, and the sale itself made by virtue thereof to the defendant. The only way in which the defendant can be protected in his title to this property is by showing that he comes within the proviso which is at the conclusion of the subsection of the Bankruptcy Act quoted above—that is, by showing that he was a "bona fide purchaser for value" of the property in question, and that he "acquired the same without notice or reasonable cause for inquiry" as to the insolvency of the bankrupt.

It has been held that the burden is upon the purchaser at such a sale to show that he comes within the terms of said proviso, and that, in order for his title to be protected, the duty is upon him to show that he is a bona fide purchaser for value, and that he acquired the property without notice of the insolvency of the bankrupt or reasonable cause for inquiry. 1 Remington on Bankruptcy, § 1482, p. 883; Mencke v. Rosenberg, 9 Am. Bank. R. 323, 202 Pa. 131, 51 Atl. 767, 90 Am. St. Rep. 618.

It is not necessary, however, for this court to decide whether the burden of proof in this case was upon the defendant or upon the trustee, as the trustee assumed the burden of proof and introduced evidence tending to show that the defendant was not a bona fide purchaser for value, and that he acquired the property with full knowledge of the bankrupt's insolvency at the time of the sale. It is necessary, therefore, in order to decide the case, to thoroughly consider and

analyze the evidence adduced at the hearing of the case, so as to determine whether the defendant is an innocent purchaser for value without notice or reasonable ground for inquiry.

[4, 5] 3. The court has carefully read and reread this evidence, and has come to the conclusion that the defendant is not a bona fide purchaser for value of the property, and did not acquire same without notice or reasonable cause for inquiry, as required by the statute.

For several months prior to the sale the bankrupt company had ceased to do business and was in the hands of a committee of its creditors, who were engaged in trying to realize upon its assets. This was fully known to the defendant. He was himself a creditor of the bankrupt, and had tried unsuccessfully to collect his debt. The hopeless insolvency of the bankrupt for several months prior to the bankruptcy proceedings was a matter of common knowledge in the community in which the bankrupt company conducted its operations and in which the defendant resided, and defendant was a frequent visitor at the sawmill plant of the bankrupt and was associated in business with Dr. Perkins, the former president of the company, who had been superseded by the creditors' committee of the company. The attorney for the plaintiffs in fi. fa. testified that he knew of the insolvency of the company, and Dr. Ellabee, the defendant's agent, who bought this skidder for him at the constable sale, also testified that he knew at the time that the company was insolvent. It is true that the defendant denies that he knew of this insolvency; but this general denial, under the circumstances of the case, should not be permitted to avail him. There is no one so blind as those who will not see. Under the Bankruptcy Law, mere lack of knowledge will not protect the defendant. He must also be "without notice or reasonable cause for inquiry." The Code of Georgia lays down the principle here involved in the following very apt language:

Section 4530: "Notice sufficient to excite attention and put a party on inquiry is notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, is equivalent to knowledge, in fixing the rights of parties."

It is not necessary in this case for the trustee to adduce proof either of actual knowledge or of actual belief on the part of the defendant of the insolvency of the bankrupt at the time of the sale. It is only necessary to show such surrounding circumstances as would lead an ordinarily prudent business man to conclude that the bankrupt was insolvent at the time in question.

"Notice of facts which would incite a person of reasonable prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would develop." Collier on Bankruptcy (10th Ed.) pp. 820 and 821, and cases there cited; Wager v. Hall, 16 Wall. 584, 601, 21 L. Ed. 504; Walbrun v. Babbitt, 16 Wall. 577, 21 L. Ed. 489; In re Moody, 134 Fed. 628.

Upon a careful consideration of the evidence, therefore, the court is forced to the conclusion that the defendant, in spite of his professed ignorance, had full notice of the insolvency of the bankrupt at the time

he bought the property in question, which was only two weeks before the bankruptcy petition was filed.

4. The defendant at the time of the purchase was engaged in the sawmill business as a member of the firm of Perkins, Kicklighter & Co., and was very anxious to buy this skidder, and approached the chairman of this committee several times with reference to the purchase of same. The skidder cost when new $3,000, and had been in use some eight or nine years, and the chairman asked $1,000 for it. The defendant offered him $500. The chairman refused to accept this price, and thereupon the defendant at a later date told the chairman he thought he might give $750 for it, but first wanted to ascertain its condition. With this purpose in view defendant testified that he had it moved from its original place in the woods up near his sawmill, where he could see it. This was done on April 8th. The next day it was levied on by the constable, and it seems clear from the evidence that defendant told the constable where he could find the skidder. This was done while defendant was negotiating with the chairman of the creditors' committee for the purchase of the skidder. This chairman lived in Savannah, and his representative, Mr. Willingham, was at the sawmill plant of the bankrupt, and yet, although the defendant knew the skidder was levied on while negotiations for the purchase were pending, same was kept secret from the officers and agents of the bankrupt. Defendant, Kicklighter, was at the sawmill plant of the bankrupt a few days before the time when the constable went to that location in search of property on which to levy the executions in question, and knew his purpose. There was sufficient property at the sawmill plant of the bankrupt, which was located in the 1607th district, G. M., of Tattnall county, in which the judgments in question were rendered, to produce the amount, if same had been levied on; but, instead thereof, the attorney for the plaintiffs in fi. fa. took the executions out of the hands of the constable of that district and sent them to the constable of the 401st district, G. M., and had him to levy on the skidder in question, which had been just a day or two before that time moved by defendant up near his sawmill. No notice of this levy was given to the bankrupt, and the constable advertised the sale of same to occur on the regular court day of his justice court in his district on the 20th day of April, 1912, by posting up notices at the door of the building in which the justice court was held and at two other places in the district. Otherwise, the attorney for the plaintiffs in fi. fa. kept the matter secret, for fear, as he testified, that some other creditor would claim the proceeds of the sale of the property, and thus keep him from collecting his judgments. On the day when the sale occurred the attorney for the bankrupt went to the justice court ground where the sale was to occur and looked upon the door of the justice court to see if any sales were advertised for that day. He saw no notices of any sales. Later in the day, between 11 and 12 o'clock, defendant approached this attorney and invited him to ride back to Claxton, where this attorney lived, in his automobile, which invitation was accepted, and thus the attorney for the bankrupt was ignorant of the sale of the property. Thereafter, at a later hour on the same day, the

skidder was sold by the constable and bought by Dr. Ellabee, the agent of defendant, at the price of $200. The skidder was not brought to the place of sale, but was allowed to remain at a place some eight miles distant, near defendant's sawmill, where it was located when it was levied upon.

The court is of the opinion that the defendant was not a bona fide purchaser of the property for value, but that he acted in bad faith in the matter, and that as a result of same he acquired the property at a totally inadequate price. The utmost secrecy was observed in the levy and advertisement and sale of the property. The defendant for reasons of his own did not bid on the property personally on the day of the sale, but had it bid in by his kinsman, Dr. Ellabee. He was very anxious to purchase the skidder, and had tried to buy same several times from the chairman of the creditors' committee of the bankrupt, as above stated, and yet, while these negotiations were pending, he moved the skidder near his own mill and disclosed its location to the constable, who levied upon same the next day and did not notify the officers or agents of the bankrupt that the skidder had been levied on. The attorney for the plaintiffs in fi. fa. kept the levy and sale a secret, and though the defendant may not have conspired with him in thus secretly selling the skidder without notice to the bankrupt, yet he took advantage of same and was thus enabled to buy the property at a very inadequate price. The court does not think that the conduct of the defendant as set out in this division of its opinion is sufficiently fraudulent of itself to invalidate the sale, but same is referred to as throwing light upon the question involved in this case as to whether he was a bona fide purchaser for value without notice of the insolvency of the bankrupt, or reasonable cause for inquiry, as required by the Bankruptcy Law. While the facts detailed may not show actual fraud sufficient to invalidate the sale, they certainly show that defendant was not a bona fide purchaser for value without notice.

5. The conclusion of the court, therefore, is that the defendant was not a bona fide purchaser of the property for value without notice of the insolvency of the bankrupt, or reasonable cause for inquiry, as required by the statute. His title, therefore, must fall. In re Goldberg, 10 Am. Bank. R. 97, 121 Fed. 578; In re Goldberg, 9 Am. Bank. R. 156, 117 Fed. 692; Mencke v. Rosenberg, 9 Am. Bank. R. 323, 202 Pa. 131, 51 Atl. 767, 90 Am. St. Rep. 618; Brown v. Case, 180 Mass. 45, 61 N. E. 279, 6 Am. Bank. R. 744; 1 Remington on Bankruptcy, pp. 882 and 883. The following cases recognize the principle laid down in these cases, but hold that if the defendant was a bona fide purchaser for value without notice, or reasonable cause for inquiry, the trustee could collect the money realized from the sale of the property either from the sheriff or from the plaintiffs in execution. In re Breslauer, 121 Fed. 910, 10 Am. Bank. R. 33; In re Kenney, 5 Am. Bank. R. 355, 105 Fed. 897, 45 C. C. A. 113; Jones v. Stevens, 94 Me. 582, 48 Atl. 170, 5 Am. Bank. R. 571; In re Raymond W. Kenney, 2 Am. Bank. R. 494, 95 Fed. 427; In re Franks, 2 Am. Bank. R. 634, 95 Fed. 635. However, in this case the defendant is not a bona fide purchaser for value without notice, or reasonable ground for inquiry,

and therefore the trustee can recover the property or its value from him.

[6] 6. Defendant contends that the trustee cannot maintain this bill without first tendering back to defendant the amount of $200 paid by him for the skidder in question. This question is settled adversely to defendant by a decision in this court rendered by Judge Speer in the case of Johnston v. Forsyth Mercantile Co., 127 Fed. 845 (4). See, also, the case of Thomas et al. v. Beals, 154 Mass. 51, 27 N. E. 1004 (3).

[7, 8] 7. The only question remaining for consideration is whether the defendant is entitled to credit in this case for the $200 paid by him. In suits at law, the defendant would have no such right; but the pending bill is in equity, and the general rule on the subject in equity is that, where a conveyance is founded on *actual fraud,* the grantee is regarded as being particeps criminis, and is not entitled to reimbursement. 20 Cyc. 628; Biggins v. Lambert, 213 Ill. 625, 73 N. E. 371, 104 Am. St. Rep. 238. But where the conveyance is merely constructively fraudulent the grantee is entitled to reimbursement. 20 Cyc. 626; Scott v. Winship, 20 Ga. 429 (2). In the case of Boyd & Suydam v. Dunlap, 1 Johns. Ch. (N. Y.) 478, quoted in the case of United States v. Griswold (C. C.) 8 Fed. bottom of page 504, the rule is laid down in the following language:

"When a deed is sought to be set aside as voluntary and fraudulent against creditors, and there is not sufficient evidence of fraud to induce the court to avoid it absolutely, but there are suspicious circumstances as to the adequacy of the consideration and fairness of the transaction, the court will not set aside the conveyance altogether, but permit it to stand as a security for the sum actually paid."

After careful consideration of all the facts and circumstances of the case, the court is of the opinion that the action of the defendant in this case in buying the skidder in question is only constructively fraudulent, made so by the Bankruptcy Act on account of the retroactive effect of the filing of the petition in bankruptcy, which happened shortly after the defendant bought the property in question. We do not think that defendant actively conspired with the attorney for plaintiffs in execution in having the property levied on and secretly sold, yet he took advantage of the situation and bought the property at an inadequate price. We do not think the transaction was a fair one on his part, and yet if it had not been for the subsequent filing of the petition in bankruptcy we hardly think that he would have been guilty of such actual fraud as to warrant the court in setting aside the sale. As the title held by defendant is, therefore, only constructively fraudulent, we think he should be entitled to reimbursement for the amount of $200 paid by him for the skidder—such claim to be subject to the claim and title of the trustee to the property. The trustee, however, is entitled to collect this amount back as a voidable preference from the plaintiffs in fi. fa., to whom the constable paid over the money. In re Breslauer, 121 Fed. 910, 10 Am. Bank. R. 33; Clarke v. Larremore, Trustee, 188 U. S. 486, 23 Sup. Ct. 363, 47 L. Ed. 555, 9 Am. Bank. R. 476.

[9] 8. On account of the fact that several years have intervened since defendant's purchase of the skidder in question, and that, there-

fore, the skidder has deteriorated in value in the meantime, we think that it would be equitable to fix the value of the property at the time defendant bought same as a basis of the decree to be made in this case. It appears from the evidence that defendant offered just before he purchased the skidder $500 for same, and that this price was also offered by another party. We hardly think that this was the full value of the skidder, but under the facts in the case the court finds that the value of the skidder at the time of the sale and the filing of the bill was $600; and allowing defendant credit for the $200 paid by him, defendant would have to pay the sum of $400, with interest from June 26, 1912, and all costs of these proceedings, in order to repurchase said property from the trustee.

A decree will therefore be entered, setting aside the sale made by the constable of said skidder and appurtenances, and vesting the title to same in the complainant in this case, and providing that in the event defendant fails to pay said sum of $400 and interest and costs in 30 days, so as to repurchase said property as aforesaid, said trustee shall sell same, and retain said sum of $400 and interest and all costs, and turn over the balance, if any, to said Kicklighter, his legal representative, or assigns.