## In re COX-RACKLEY CO.

(District Court, E. D. North Carolina. August 21, 1917.)

BANKRUPTCY ☞288(2)—ACTION BY TRUSTEE—SUMMARY PROCEEDINGS.

Under Bankruptcy Act July 1, 1898, c. 541, § 2(7), 30 Stat. 545 (Comp. St. 1916, § 9586), authorizing the bankruptcy courts to cause the estates of bankrupts to be collected, reduced to money, and to determine controversies in relation thereto, and section 23b (section 9607), providing that suits by the trustee shall only be brought in the courts where the bankrupt might have brought them, unless by consent of the proposed defendants, except suits for the recovery of property under certain sections, where before the filing of a petition in bankruptcy property had been levied on under executions, and after the filing of the petition, no injunction having been obtained or receiver appointed, the deputy sheriff sold the property under the executions, and paid the proceeds to the clerk of the court, who paid a part thereof to the attorneys for the judgment creditors, and such attorneys paid such proceeds to the judgment creditors before the adjudication in bankruptcy, and the deputy sheriff and the attorneys therefore had no property of the bankrupts, or anything representing the property of the bankrupts, in their control on the date of the adjudication, the bankruptcy court could not entertain a summary proceeding by the trustee to require them to pay over and deliver the funds of the bankrupt coming into their possession or under their control after the filing of the petition.

In Bankruptcy. In the matter of the Cox-Rackley Company, bankrupt. On petition for review of an order of the referee dismissing a summary proceeding by the trustee. Order affirmed.

Russell M. Robinson, of Goldsboro, N. C., for trustee.

Langston, Allen & Taylor, of Goldsboro, N. C., and Murray Allen, of Raleigh, N. C., for respondents.

CONNOR, District Judge. The referee's certificate discloses the following case:

Prior to February 12, 1917, respondent Homer Brock recovered a judgment for the sum of $28.90 against Cox-Rackley Company. Respondents Langston, Allen & Taylor, attorneys at law, representing certain nonresident creditors, on or about the same date, recovered several judgments against said Cox-Rackley Company, aggregating the sum of $1,428.74. Executions were issued upon all of said judgments, returnable to the superior court of Wayne county, and placed in the hands of respondent D. G. Rhodes, deputy sheriff of said county, who immediately levied upon the stock of goods of Cox-Rackley Company, located in the town of Mt. Olive, in said county, being the place at which said corporation was engaged in conducting a general merchandise business. He advertised the goods for sale pursuant to the terms of the executions, to take place February 26, 1917.

On February 23, 1917, certain creditors of Cox-Rackley Company filed, in the office of the clerk of this court, at Raleigh, a petition in involuntary bankruptcy against said corporation, alleging insolvency and the recovery of said judgments and levy of the executions thereupon as acts of bankruptcy. A subpoena was duly issued, and, together

with a copy of the petition, delivered to the United States marshal, returnable March 10, 1917. It appears that the deputy marshal, to whom the subpœna and petition were delivered for service, was unable to find either of the officers of the corporation until some day subsequent to February 26, 1917. No injunction, or other order, was asked for, or issued, restraining the sale of the goods, nor was any application made for the appointment of a receiver. On February 26, 1917, the deputy marshal went to Mt. Olive, and, before the sale took place, as advertised, under the executions, delivered a copy thereof to respondent D. G. Rhodes, who, pursuant to the advice of his attorney, proceeded to ·sell the goods and delivered them to the purchaser. He immediately paid the amount received from the purchaser, $4,800, into the office of the clerk of the superior court of Wayne county, as directed by the terms of the writs of execution in his hands, and made due return ·of ·his action in the premises, receiving from the clerk a check for $47.41, ·the amount of his cost and commissions. The clerk gave to respondent Homer Brock his check for $28, the amount due on the judgment recovered by him against the corporation. He gave to respondents Langston, Allen & Taylor, attorneys, a check for the amount due on the judgment recovered by them for their clients. He gave to J. R. Hood, attorney for the Cox-Rackley Company, a check for $3,294.95, being the balance remaining in his hands. This amount was later paid to the trustee, and is not involved in this controversy.

The referee does not find, nor is there evidence sufficient to fix the the clerk with, notice of the filing of the petition in bankruptcy. There was some conversation in his office between the attorneys in regard to the matter, but nothing was said to the clerk calculated to put him upon notice; he proceeded in strict accordance with his official duty.

Respondents Langston, Allen & Taylor collected the check given to them by the clerk and held the proceeds about a week, during which time no demand was made on them to retain the money, nor was any action taken towards securing an injunction or receiver. They deducted commissions and remitted the amounts due their several clients. .The referee finds that respondents Langston, Allen & Taylor and Mr. Dannenberg and D. G. Rhodes had actual knowledge that an involuntary petition in bankruptcy had been filed against Cox-Rackley Company before the sale of the goods. The knowledge of Rhodes appears to be based upon the delivery to him by the deputy marshal of the subpœna and the petition. He further finds that respondents Langston, Allen & Taylor and Dannenberg, attorneys and agents of the creditors, other than Brock, had reasonable cause to believe that Cox-Rackley Company was insolvent before the judgments were obtained, or suits were brought against said corporation. There is no evidence, or finding by the referee, in regard to knowledge or reasonable cause to believe on the part of respondent Homer Brock respecting the insolvency of Cox-Rackley Company.

On March 10, 1917, Cox-Rackley Company was adjudged bankrupt, ·.and W. A. Dees duly elected and qualified as trustee. On April 3, 1917, he filed his petition before the referee, setting out substantially the

foregoing facts, asking that notice issue to respondents to show cause why they should not be ordered to—

"pay over and deliver the funds and assets of the estate of said Cox-Rackley Company, which came into their possession, or under their control, as above set forth, and for an order requiring and admonishing the judgment creditors hereinbefore mentioned and each of them, to show cause, if any they have or know, and each of them, respectively, why they should not pay over and deliver to W. A. Dees, trustee, the amount of funds and assets of the said bankrupt turned over to them on account of their respective judgments hereinbefore mentioned."

The referee issued notice to respondents Langston, Allen & Taylor, D. G. Rhodes, and Homer Brock, returnable on April 14, 1917, when they appeared and challenged the jurisdiction of the referee to make any order or render any judgment in a summary proceeding against them. After hearing the evidence and argument, the referee found the facts as certified, and found as a conclusion of law:

"That respondents are not guilty of any contempt and that this proceeding is not the proper remedy."

The trustee filed his petition for review in accordance with the provisions of the statute, general orders, etc. The proceeding, so far as it relates to the creditors, who received, and so far as appears retain, the proceeds of the sale, other than Homer Brock, appears to have been abandoned. The question presented upon the record, and argued by counsel, is directed to the jurisdiction or power of the court, by the summary method adopted by the trustee, to compel respondents, or either of them, to pay over the proceeds of the sale of the goods which came into, and before the filing of this petition passed out of, their possession and control.

It is conceded that respondents D. G. Rhodes and Langston, Allen & Taylor did not have in their possession, or under their control, any property or money, or anything representing property or money, of the bankrupt, on March 10, 1917, the date of the adjudication, nor on April 3, 1917, the day upon which this proceeding was instituted. Neither the bankrupt, nor this court, nor either of its officers, had in their possession, or under their control, at the date of the filing of the petition in bankruptcy, nor subsequent thereto, any goods, property. or money, the proceeds of the sale of, or representing, any such property at the time of, or subsequent to, the filing of the petition. This fact is not determinative of the rights or remedies of the trustee, but it is essential that it be kept in view for the purpose of discussing the question of procedure. The respondent D. G. Rhodes, in strict obedience to the terms of the writs of execution issued from the state court having jurisdiction in the premises had, prior to the filing of the petition in bankruptcy, levied upon and taken into his possession the property of the defendant. For the purpose of executing the writ, the title to the property of the corporation was thus vested in him. He was proceeding, as was his duty, to sell the property for the purpose of satisfying the judgments, when the petition in bankruptcy was filed.

Counsel for the trustee strongly insists that, upon the facts certified by the referee, and conceded by the respondents, the courts may, by a

summary proceeding order, and by appropriate proceedings compel, respondents to pay over to the trustee the proceeds of the sale of the goods. Of course, upon the finding that neither of them had such proceeds in their custody, or under their control, either at the time of the adjudication or since that date, the logical result of his contention leads to the further conclusion that, upon their failure to do so, they may be attached for contempt. Unless this be true, the court is invited to do a vain thing, because it is manifest that they have not the ability to comply with the order which the court is asked to make. It is therefore necessary, before proceeding further in the discussion, to examine and endeavor to fix the extent of the power of the court to entertain this proceeding.

The power vested in the court of bankruptcy to entertain the petition of the trustee and grant the relief, it is alleged, is found in section 2 (7) of the act:

"To cause the estates of bankrupts to be collected, reduced to money, * * * and determine controversies in relation thereto." Comp. St. 1916, § 9586.

This section, in connection with the provisions of section 23b, came under discussion in Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175. In White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183, it was held:

"That the * * * court of bankruptcy was authorized to compel persons, who had forcibly and unlawfully seized and taken out of the judicial custody of that court property which had lawfully come into its possession as part of the bankrupt's property, to restore that property to its custody."

This language was used in response to the specific question submitted by the Circuit Court. In Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814, the property, which had been transferred by a general assignment for the benefit of creditors nine days before the adjudication, was in the possession of the purchaser at the sale made by the assignee. In a summary proceeding, the purchaser consenting to the form of procedure, the summary proceeding was sustained. In Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, it appearing that the defendant held money "as the agent of the bankrupt, and without any claim of adverse interest in himself," the power of the bankrupt court to order its payment to the trustee of the bankrupt was sustained. In that case it appeared that E. B. Nugent was adjudged bankrupt March 23, 1900, upon the petition of his creditors filed February 19, 1900. On February 9, 1900, he delivered to his son, W. T. Nugent, $4,133.45 to hold as his agent. On February 14, 1900, he delivered to his said son a check for $12,000, the proceeds of which, at the time of the adjudication and of the institution of the proceeding, remained in his hands as agent of the bankrupt. The referee found that the respondent had the money in his hands as agent or bailee only. He was ordered to pay it over to the trustee, and upon refusal to do so was attached for contempt. The order was affirmed. It will be observed that in each of these cases the property, or money, was in the possession, and under the control, of the respondents.

In Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413, it appears that certain persons made an assignment for the benefit of their creditors to one Comingor; that he proceeded to execute the trust, selling the property and disbursing the larger portion of the fund, reserving his commissions. Within four months from the date of the assignment, the assignors were adjudged bankrupt, and the Louisville Trust Company appointed receiver. After some litigation in the state courts, not affecting the question of jurisdiction, the referee made an order requiring Comingor and his counsel to appear and show cause why they should not pay over to the receiver the amount of his commissions and fees received by his counsel. They challenged the power of the referee to entertain the summary proceedings, and respondent showed that he had retained $3,398.90 of the proceeds of the sale of the property assigned to him on account of his commissions before any bankruptcy proceedings were instituted and had without any order of the court paid his counsel $3,200. The referee held the response insufficient and made the rule absolute. Upon petition for review, the order of the referee was affirmed. This was reversed by the Circuit Court of Appeals, and this judgment affirmed by the Supreme Court.

The next case, in order of time, is Clarke v. Larremore, 188 U. S. 486, 23 Sup. Ct. 363, 47 L. Ed. 555. In view of the weight attached to this decision by counsel for the trustee to sustain this proceeding, it will be well to state concisely the facts: Petitioner, on March 6, 1899, recovered judgment against one Kenney for a large amount. Execution was issued on the judgment and levied on his property and sale made thereunder, March 15, 1899. Shortly after the levy of the execution one Abbett sued out a writ of attachment against Kenney and caused it to be levied on the same stock, charging that the judgment against Kenney was fraudulent. Abbett commenced, in aid of his attachment, an injunction suit for the purpose of preventing the further enforcement of the judgment, and obtained a temporary order restraining the sheriff from paying to petitioner the money derived from the sale of Kenney's property. The restraining order was vacated April 13, 1899. On the same day, and before the sheriff had returned the execution, or paid the money collected on it, a petition in involuntary bankruptcy against Kenney was filed in the District Court, and an order made by the District Judge restraining the sheriff from paying the money to Clarke, the execution creditor. Kenney was thereafter adjudged bankrupt, and the plaintiff appointed trustee. The judge thereupon made an order directing the sheriff to pay the money in his hands derived from the sale of the property of Kenney to the trustee. It was held that, when Kenney was adjudged bankrupt, the lien obtained by the levy of the execution was rendered null and void, and the property levied upon discharged; that the money received by the sheriff took the place of the property. To the contention that, upon the sale, the money became the property of the creditor, and not of the defendant in execution, it is said:

"The writ of execution had not been fully executed. Its command to the sheriff was to seize the property of the judgment debtor, sell it, and pay the

*proceeds over to the creditor.* The time within which that was to be done had not elapsed, and the execution was still in his hands, not fully executed. The rights of the creditor were still subject to interception. * * * A different question might have arisen if the writ had been fully executed by payment to the execution creditor."

The learned justice is careful to say that the decision of the question is not before the court, "and may depend on many other considerations." The opinion carefully restricts the decision to the facts apparent upon the record.

In Whitney v. Wennam, 198 U. S. 539, 25 Sup. Ct. 778, 49 L. Ed. 1157, the trustee filed a bill in equity against defendants, who had the possession of property belonging to the bankrupt and the proceeds of property which had been sold. The jurisdiction of the court to entertain the bill was sustained. In First Nat. Bank v. Title & Trust Co., 198 U. S. 280, 25 Sup. Ct. 693, 49 L. Ed. 1051, in the fourth headnote it is said:

"The bankruptcy court is without jurisdiction to determine adverse claims to property not in the possession of the assignee in bankruptcy, by summary proceedings, whether absolute title or only a lien is asserted."

In Babbitt v. Dutcher, 216 U. S. 102, 30 Sup. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969, an order in a summary proceeding was sustained, directing the delivery to the trustee of the books and records of a bankrupt corporation. In Murphy v. Hofman Co., 211 U. S. 562, 29 Sup. Ct. 154, 53 L. Ed. 327, the property of the bankrupt, being in the possession of the receiver of the court, was seized by a sheriff, pursuant to a writ of replevin issuing from the state court against the bankrupt. Mr. Justice Moody, discussing the question presented upon the claim of the trustee, said:

"Where a court of competent jurisdiction has taken property into its possession, through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The court, having possession of the property, has an ancillary jurisdiction to hear and determine all questions respecting the title, possession, or control of the property. In the courts of the United States this ancillary jurisdiction may be exercised, though it is not authorized by any statute. The jurisdiction in such cases arises out of the possession of the property and is exclusive * * * of all other courts, although otherwise the controversy would be cognizable in them. * * * When the court of bankruptcy, through the acts of its officers, such as referees, receivers, or trustees, has taken possession of a res, as the property of a bankrupt, it has ancillary jurisdiction to hear and determine the adverse claims of strangers to it, and * * * its possession cannot be disturbed by the process of another court." Hebert v. Crawford, 228 U. S. 204, 33 Sup. Ct. 484, 57 L. Ed. 800.

It will be observed that, in each of the cases cited, the court, sustaining summary proceedings by the bankrupt court, either the respondent had in his possession, at the time of the adjudication, the property claimed by the trustee or its proceeds, or had interfered with the possession of some officer of the bankrupt court. In none of them had the property, or its proceeds, passed out of the possession or beyond the control of respondents, before the adjudication, or the institution of the summary proceeding; they had the ability to comply with the order to deliver the property or pay over the money received by them at the time it was made. In Re Rathman, 183 Fed. 913, 106

C. C. A. 253 (C. C. A. 8th Cir.), Judge Sanborn reviews all of the decisions, and discusses exhaustively the cases in which a summary proceeding may be resorted to. In that case the bankrupt, more than four months prior to filing the petition, executed mortgages to the respondent on real and personal property to secure his promissory note. Thereafter, and within four months of the filing of the petition, he executed a general assignment to another person, with the approval of respondent, transferring and assigning the same property covered by the mortgage. The assignee took possession of the property; he sold a part of the personal property, a stock of merchandise; and that portion which he did not sell he delivered to the trustee in bankruptcy. Between the date of the assignment and the sale, the petition for adjudication of the mortgagor and assignor was filed. A foreclosure proceeding was instituted in the state court, and the real estate and a portion of the personal property brought to sale and purchased by respondent. The trustee filed a petition before the referee, and he issued an order to respondent to show cause why the chattel mortgage and the certificate of sale of the real and personal property should not be avoided, and why he should not pay to the trustee the value of the mortgaged personal property that he bought at the foreclosure sale. The trustee also asked for orders touching the sale of the real estate, but for the purposes of this case this is immaterial. The respondent challenged the jurisdiction of the referee. The judge states the question raised by the record, saying that the trustee did not ask the possession, and the respondent was not called upon to show cause why he should not deliver the possession, of any property to the trustee:

"What the trustee asked by the petition was the final adjudication of (1) his claim to recover of the respondent, for the latter's alleged conversion of the personal property which he bought at the foreclosure sale thereof, the legal damages in conversion, the value of the property converted, at the time of its conversion."

This language describes the character of the claim made by the trustee here, the only difference being that there the respondent had in his possession the property, and here respondents have neither the property nor its proceeds. The judge, after reviewing the decisions of the Supreme Court, says:

"How, then, may the trustee escape from the decisions that have been cited, from the declarations of the Supreme Court that the jurisdiction of the bankruptcy court summarily to determine claims to liens upon, and title to, property claimed as a part of the bankrupt, arises out of its actual possession of the property. * * * and is exclusive of all other courts, because the actual possession draws to it the legal custody of the property, although otherwise such claims would be cognizable by other courts"—citing a number of cases.

The judge proceeds to state the contention of the trustee that the filing of the petition in bankruptcy, followed by the adjudication, without more, gave the bankruptcy court constructive possession of the property and vested it with jurisdiction to determine all claims of title to liens upon it, although the actual possession of it was never acquired by the bankruptcy court. He discusses the contentions seriatim, in the light of the decided cases. In regard to the claim, made here, that

"the filing of the petition is a caveat to all the world, and in effect an attachment and injunction," he says:

"But the later decisions of the Supreme Court adjudge that this statement applies only to parties who have no substantial claim of a lien upon or title to the property of the bankrupt, and that, against those who have such claims of existing liens or titles when the petition in bankruptcy is filed, that filing is neither a caveat nor an attachment, that it creates no lien, and that until the bankruptcy court, by some act of one of its officers, takes actual possession of the property, or makes such claimants parties to the proceeding by some order or process, or notice of the proceeding, comes to them, their liens, titles, and remedies are unaffected thereby, and they are strangers to the proceeding" —citing a number of decided cases.

Conceding that the bankruptcy court may, and upon application would, upon the filing of the petition, have issued an injunction restraining the sheriff from selling, and, if necessary, have appointed a receiver to take possession of the property, and thereby brought it within its jurisdiction, the court was not asked to do either, although counsel for petitioning creditors well knew that it was advertised to be sold under the executions on February 26, 1917. Judge Sanborn states forcibly and clearly the conclusion to which the contention would result—that, if correct in all cases, it excludes the jurisdiction of every other court, and gives the bankruptcy court the power to determine, summarily, all claims to liens upon, or interests in, the property in such custody:

"But this theory flies in the face of the settled rule, repeatedly announced by the Supreme Court, that the actual possession by the bankruptcy court is the indispensable condition of its exclusive and of its summary jurisdiction"— quoting the language used by the court in Bardes v. Bank, supra.

The learned judge thus concludes his examination and review of the decided cases:

"Here is the touchstone of the exclusive and of the summary jurisdiction of the bankruptcy court to determine the merits of adverse claims to liens upon, and titles to, property claimed to belong to the bankrupt. It is the taking possession of the property, as the property of the bankrupt, by the act of some officer of the bankruptcy court, such as a referee, a receiver, or a trustee."

The court dismissed the proceeding upon the ground that the court had never, through its officers, taken possession of the property, and upon the further ground that respondent was an adverse claimant. In Clay v. Waters, 178 Fed. 385, 101 C. C. A. 645, 21 Ann. Cas. 897, Judge Sanborn carefully stated the grounds upon which the summary jurisdiction rested, in strict accordance with his opinion in the Rathman Case. In Stone v. Mark, 227 Fed. 975, 142 C. C. A. 433, he said that subsequent decisions had not persuaded to any modification of the conclusions reached in the Rathman Case.

A careful examination, with the aid of the well-prepared briefs of counsel, have failed to disclose any case in which a summary proceeding has been sustained, when the respondent had not interfered with the possession of the property after it had come into the possession of the court through its officers, or, as in the Nugent Case, held the property as agent of the bankrupt. In these cases the respondent is a mere bailee or agent of the bankrupt. As pointed out in Clarke v. Larre-

more, supra, Judge Brewer leaves the question open when the sheriff had paid the money over to the creditor, with the significant observation that its decision "would depend upon many other considerations."

De Friece v. Bryant (D. C.) 232 Fed. 233, relied upon by the trustee, was a suit in equity; no question of the summary jurisdiction was involved. The judge said:

"Here the relief sought is not by summary proceeding. It is sought by a plenary or independent suit. This is the only way in which it is obtainable in any court. It is not obtainable anywhere by proceedings of a summary character."

In discussing one phase of the bill, the learned judge asserts the power of the court, in case the trustee has possession of the property, to protect it from interference by appropriate proceedings.

An examination of the facts appearing in the decisions cited by the trustee does not disclose any case in which the respondent has not the property claimed by the trustee, or its proceeds, either in his possession or under his control. In Re Breslauer (D. C.) 121 Fed. 910, it appeared that respondent obtained a judgment against Breslauer within four months of the filing of the petition in bankruptcy, and the sheriff sold the property under execution on August 11, 1902, and, after deducting his commissions, paid over the balance to the respondent. "The money paid over by the sheriff to the bank [respondent] was deposited by itself, and a certificate * * * issued therefor in the name of the bank. The fund has been kept separate." Judge Ray held that, upon the adjudication in bankruptcy, the judgment became null and void, as did the levy and sale thereunder, and the property itself, or its proceeds, may be followed and reclaimed by the trustee, in whom the title thereto vested on the 12th day of August, 1902," that being the date of the adjudication, and ordered the money paid over to the trustee. It is not necessary, for the purpose of this discussion, to say more than that the fact that the money, the proceeds of the sale, was "kept separate," and its delivery, or payment over to the trustee, within the power of the respondent, clearly, and in a most essential respect, distinguishes the case from that disclosed in this record.

Attention is called to the citation of the case by Judge Lambdin, in Dreyer v. Kicklighter (D. C.) 228 Fed. 744. That was a bill in equity to set aside a sale made by a sheriff, upon the ground that it was not properly conducted and that defendant, purchaser, was not a bona fide purchaser. The sale was set aside upon terms. It appeared that the money derived from the sale had been paid over to the plaintiff in the execution. While in no respect relevant to the questions in issue and decided, the judge, referring to the fact that the money had been paid to the plaintiff in the execution, said:

"The trustee, however, is entitled to collect this amount back as a voidable preference from the plaintiff in fi. fa."—to whom the constable paid over the money, citing the Bresslauer and Larremore Cases, supra.

The proposition advanced here is not presented in that case, nor was it in either of the cases cited, and was expressly excluded in the Larremore Case. In Re Kenney (D. C.) 95 Fed. 427, the sheriff sold the property of the bankrupt under an execution issued upon a judgment

rendered within a month before the petition was filed. A stay was ob-
tained against the payment of the money to the plaintiff. Clarke v.
Larremore, supra, was an appeal from the order of Judge Brown.
See, also, In re Kenney (D. C.) 97 Fed. 554. This procedure was open
to petitioning creditors here.

The learned counsel for trustee insists that the filing of the petition
places all of the property of the bankrupt in custodia legis, and that,
therefore, the sale by the sheriff was a disturbance of, an interference
with, the possession of the court, and therefore a contempt of such
court. It is undoubtedly true that the Supreme Court has used the lan-
guage quoted in a number of decisions, as it has frequently said that
filing the petition, from the time it was filed in the clerk's office, oper-
ated as an attachment upon the property of the bankrupt—an injunc-
tion against its transfer. Following this statement, counsel say that
the deputy sheriff, before making the sale, was notified of the filing of
the petition, and that by his further action he and the other respondents
particeps criminis have made themselves liable to an attachment for
contempt, of which they can purge themselves only by paying the pro-
ceeds over to the trustee; that if, by paying the money over to the plain-
tiffs in the execution, they have rendered themselves unable to deliver
the money received from the sale, they can be discharged only by
showing their inability, from any source, to comply with the order of
the court. These propositions are entitled to serious consideration.
Their adoption, with the logical results, are of grave import to the re-
spondents, and others similarly situated.

While the courts have uniformly held that the filing of the petition
in bankruptcy operates as an attachment of the bankrupt property, and
that from such time it is in custodia legis, it will be observed that in all
of these cases, either, as in Mueller v. Nugent, supra, the property
sought to be reached was in the possession of the bankrupt, or the re-
spondent as his agent or bailee, or, as in the Larremore Case, the sher-
iff, or the trustee, pursued his remedy for its recovery by a plenary
suit. In Bank v. Cox, 143 Fed. 91, 74 C. C. A. 285, the trustee brought
an action of assumpsit against the attaching creditor, to whom the pro-
ceeds of the sale had been paid. Acme Harvester Co. v. Lumber Co.,
222 U. S. 300, 32 Sup. Ct. 96, 56 L. Ed. 208, was an adversary suit in
the state court brought to the Supreme Court upon a writ of error. In
Fairbanks Scales Co. v. Wills, 240 U. S. 642, 36 Sup. Ct. 466, 60 L.
Ed. 841, the property in controversy was in the possession of the plain-
tiff. The controversy involved the question of priority of claim.

Counsel insists that, unless the trustee may, by summary proceed-
ings, enforce his rights, he will be without remedy, or, if compelled to
resort to a plenary action, he will be subjected to expense and delay.
The argument, while not without force, is addressed to the question of
convenience. The answer to it is found in the ample provisions found
in the Bankruptcy Act for protecting the property of the bankrupt be-
tween the date of filing the petition and the adjudication and election
of the trustee. Collier on Bankruptcy (10th Ed.) 36–66, Bryan v.
Berkheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814; In re Hor-
stein (D. C.) 122 Fed. 266. These remedies are usually—it may be said,

uniformly—resorted to. The fact that a careful examination of the Federal Reports fails to disclose any case in which, upon facts, similar to those disclosed here, a summary proceeding has been instituted, is significant. Upon the "reason of the thing," and upon principle, the objections to the procedure are very strong. Jurisdiction in summary proceedings, being of statutory authority, and based upon necessity to prevent threatened loss to the rightful owners of property, or defiant disobedience to the orders and decrees of courts, should not be enlarged by construction or implication. Ample procedure is prescribed by the Bankruptcy Act for the protection of the rights of the trustee. If the proceeding may be sustained, the respondent deputy sheriff is subjected to imprisonment as for a contempt of the court for executing the lawful process of the state court, in the absence of any injunction or other order from the federal court. He consulted his attorney, not the attorneys of the plaintiffs in the execution, sold the property, and promptly paid the money into the clerk's office, as he was directed by the writs to do. One of the attorneys for the petitioning creditors was present when the money was paid to the clerk. He gave no notice of objection to the course pursued. The proceeding against this respondent was properly dismissed.

The respondents Langston, Allen & Taylor, in strict conformity to their professional duty, obtained judgment and caused executions to issue thereon, before any proceeding in bankruptcy was instituted. They were under no obligation to suspend the enforcement of the executions until other creditors decided whether they would file a petition against the debtor. Certainly, in receiving the money from the clerk for their clients, they were guilty of no violation of the Bankruptcy Law. It is conceded that they held the money for several days, during which the attorneys for petitioning creditors and the attorney for Cox-Rackley Company were debating whether the petition should not be abandoned. They were, it appears, considering a proposition of compromise, to which respondents were not parties. No application was made for an injunction, or the appointment of a receiver, nor were the respondents requested to retain the money. As was their duty, and without any purpose of committing a contempt of the court, they remitted the amount, less their commissions, to their clients. Whether the sheriff, or the other respondents, are liable in a plenary action to the trustee for the value of the property sold, or for its proceeds as for a conversion, is not before the court. The decision of this question "may depend upon many other considerations."

The sole question presented and decided is that, upon the facts certified by the referee, the court is without jurisdiction to entertain the summary proceeding.